

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00095-CR

---

CLARENCE HOMER
SWEGHEIMER

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 58,223-C

----------

## MEMORANDUM OPINION[1]

----------

Appellant Clarence Homer Swegheimer appeals his convictions for four counts of indecency with a child by contact and for two counts of aggravated sexual assault of a child.[2] In three points, he contends that the trial court erred

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2017).

by admitting evidence of extraneous offenses and by failing to include certain language relating to the extraneous offenses in the guilt-innocence jury charge. We conclude that the trial court did not so err, and we affirm the trial court's judgment.

**Background**

Around 2007, C.H. (Carol)[3] met Swegheimer, her next-door neighbor. After she had known him for about a year, he began regularly babysitting her three daughters, including her oldest daughter D.H. (Daisy). Swegheimer often spent money on the girls, including buying them food, clothing, and Christmas gifts. But Carol noticed that Swegheimer and Daisy, who was around ten to thirteen years old during the time that he babysat her, did not get along well.

According to Daisy's testimony, Swegheimer sexually abused her multiple times. On one such occasion, Swegheimer persuaded Daisy and her sisters to perform a fashion show for him, and at the end of the fashion show, he touched Daisy's genitals with his hand. On other occasions, Swegheimer took Daisy to his truck, where under the guise of having "talks," he kissed her breasts, kissed her sexual organ over her clothes, touched her sexual organ and breasts with his hands, forced her to touch his penis with her hands, and attempted to have sexual intercourse.

---

[3]To protect the anonymity of certain individuals associated with this appeal, we use pseudonyms. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Daisy eventually told Carol about the sexual abuse. She also spoke to Shannon May, a forensic interviewer, on two occasions. During their first conversation, Daisy told May about Swegheimer touching her sexual organ after the fashion show. During their second conversation, Daisy gave May details about other instances of Swegheimer's abuse.

A grand jury indicted Swegheimer with four counts of indecency with a child by contact and with two counts of aggravated sexual assault of a child. Before trial, the State gave Swegheimer notice of its intent to introduce evidence of his extraneous bad acts pursuant to article 38.37 of the code of criminal procedure.[4] Swegheimer filed a motion in limine and a motion to suppress that each asked the trial court to exclude evidence of those acts.

At a jury trial, Swegheimer pleaded not guilty. He testified and denied sexually abusing Daisy. He denied having "talks" with Daisy in his truck. He admitted that Daisy had participated in a fashion show with him, and he asserted that during the fashion show, Daisy and one of her sisters had mooned him. He conceded that Daisy's "breasts [had] touched [his] hands" on two occasions, but he blamed Daisy for the contact, stating, "Well, when she pushes . . . her breast into your hand, what are you supposed to do? Cut your hands off?" He also testified that while Daisy had told him that she loved him in a sexual way and had told him that she "wanted [him] to be her first," he had conveyed to her that he

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.37, § 3 (West Supp. 2017).

3

did not love her that way. Swegheimer admitted that after he had stopped babysitting Daisy, he had sent a message to her in which he had acknowledged that he had "[done] wrong to [her] and [her] sisters."

After the jury received the parties' evidence[5] and arguments, it convicted Swegheimer of all six counts. After receiving more evidence and arguments concerning his punishment, the jury assessed confinement for life for the two counts of aggravated sexual assault of a child and confinement for twenty years for the four counts of indecency with a child by contact. The trial court sentenced Swegheimer accordingly and ordered the sentences to run consecutively. He brought this appeal.

## The Extraneous Offenses

All of Swegheimer's points on appeal concern the trial court's admission of extraneous-offense evidence over his objection under rule of evidence 403 or the trial court's refusal to include his requested language relating to the extraneous offenses in the guilt-innocence jury charge. For the reasons explained below, we conclude that the trial court did not err by admitting the evidence or by refusing to include the requested language.

---

[5]Among other witnesses, the jury received testimony from Jennifer Edwards, a licensed sex offender treatment provider. Edwards did not provide any testimony specifically related to Swegheimer's acts with Daisy; she had not interviewed either Swegheimer or Daisy. Swegheimer objected to Edwards's testimony in the trial court, but he does not complain about the admission of her testimony on appeal, so we will not detail the testimony.

**The effect of article 38.37's provisions**

Article 38.37 of the code of criminal procedure creates an exception to the general exclusion in criminal trials of character evidence by proof of extraneous offenses. *See* Tex. Code Crim. Proc. Ann. art. 38.37; Tex. R. Evid. 404(a)(1), (b)(1); *Harris v. State*, 475 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see also Gonzales v. State*, 477 S.W.3d 475, 480 (Tex. App.— Fort Worth 2015, pet. ref'd) ("Although the general rule is that a person may not be convicted based on a claim of character conformity, the legislature has changed the rules when there is an allegation of a sexual offense against a child." (footnote omitted)). Under article 38.37, when a defendant is on trial for indecency with a child or for aggravated sexual assault of a child (among other crimes), evidence of the defendant's extraneous sexual crimes "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. Ann. art. 38.37, § 2(a)(1)(C), (E), (b). Before a trial court admits such evidence, the court must "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt" and "conduct a hearing out of the presence of the jury for that purpose." *Id.* art. 38.37, § 2-a; *see Gonzales*, 477 S.W.3d at 480.

5

**The admission of the extraneous offenses**

In his third point, Swegheimer argues that the trial court erred by admitting extraneous-offense evidence that proved his possession of child pornography; his sexual abuse of his stepdaughter, M.C. (Mary); and his sexual advance toward another stepdaughter, T.B. (Tara). He does not primarily argue that the evidence was inadmissible under article 38.37; rather, he principally contends that the trial court abused its discretion by overruling his objection to the evidence under rule of evidence 403 because the danger of unfair prejudice substantially outweighed the evidence's probative value. *See* Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.").

Swegheimer complains about the admission of extraneous offense evidence from three witnesses. First, outside of the jury's presence, Gina Hopson, who once worked for the Cherokee County Sheriff's Office, testified that in July 2000, she received a report about the presence of child pornography in Swegheimer's residence. The sheriff's office obtained a search warrant for the residence, and upon execution of the warrant, Hopson saw child pornography—a photograph of a young girl "completely naked" with her genitals exposed and with one hand on her cheek and the other hand by her leg—on a sheet of computer

6

paper. Hopson arrested Swegheimer for possessing child pornography, and after she advised him of his *Miranda*[6] rights, he wrote the following statement:

> I . . . started [l]ooking at porn on [t]he Internet and it went over to kiddyporn. I thought that I was in my house [and] I was safe against the world. I need help in my [l]ife[.] [W]hat [I've] done is wrong[.] [I]n my mind it was fantasy but it is still wrong[.] [M]y marriage[,] my job[,] and my life as I know it [are] all screwed up. I'm not a [predator] of children. . . . I'm messed up right now and I am sorry for what I've done[.] . . . [W]hatever happens to me[,] I understand [it] is the law.

When the State asked the trial court to allow Hopson to testify about these facts to the jury, Swegheimer objected on the ground that the evidence was more prejudicial than probative under rule 403. The trial court found that the evidence was more probative than prejudicial, overruled the objection, and permitted Hopson to testify to the jury. Later, during Swegheimer's testimony, he denied that he had ever printed a photo of child pornography and claimed that his wife had planted the photo.

Second, after Hopson's testimony concluded, Mary, who was an adult at the time of the trial, testified outside the jury's presence that when she was a child, she lived with Swegheimer in Arizona. Mary testified that on one occasion, Swegheimer touched her breasts while carrying her; that on another occasion, he put his hand down her pants while camping; that on a third occasion, he touched her breasts while she was in a kitchen; and that on a fourth occasion, he grinded against her while telling her that she was a "full grown woman and [that] he had a

---

[6]*See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

7

present for [her]." Mary testified that on the fourth incident, after she resisted Swegheimer, he yelled at her, forced her to the ground, grabbed her leg, dragged her out of the house, and locked her in a dog kennel.

Swegheimer objected to Mary's testimony under rule 403, arguing that the danger of unfair prejudice outweighed the testimony's probative value. The trial court overruled the objection and allowed Mary to testify to the jury. During his own testimony, Swegheimer denied that he had sexually abused Mary; he stated that he had "never touched that girl" sexually.

Third, during Swegheimer's testimony, outside the jury's presence, the State asked him about whether he had once made a "pass" at Tara when she was in her early teenaged years. Swegheimer objected to the question under rule 403, but the trial court overruled the objection and allowed the State to question Swegheimer about Tara in the jury's presence.[7] In front of the jury, Swegheimer admitted making a "pass" at Tara; he explained that Tara had been dressed in a t-shirt and panties and that he had said, "[L]ittle girl, you keep

---

[7]At trial, the State did not explicitly rely on article 38.37 for the admission of evidence about Swegheimer's "pass" at Tara. Instead, the State argued that evidence of the "pass" was admissible to impeach Swegheimer's earlier testimony that he would never sexually abuse a child. On appeal, while Swegheimer argues that the questions about Tara were inadmissible under rule 403, he does not contest the trial court's ruling that the questions otherwise served as proper impeachment of his testimony. *See Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993) (explaining that a defendant may open the door to his extraneous bad acts when the defendant creates "a false impression of law abiding behavior").

8

advertising, you're going to get what you want." Swegheimer claimed that he had been "high and drunk" while making that comment.

On appeal, Swegheimer mainly argues that the trial court abused its discretion by overruling his rule 403 objections.[8] Even if evidence is admissible under article 38.37, "it is subject to exclusion if its probative value is substantially outweighed [by the danger of unfair prejudice] and if rule 403 is raised in the trial court." *Wells v. State*, No. 02-16-00209-CR, 2017 WL 6759029, at *5 (Tex. App.—Fort Worth Dec. 28, 2017, pet. filed); *see Bezerra v. State*, 485 S.W.3d 133, 140 (Tex. App.—Amarillo 2016, pet. ref'd) (explaining that when a defendant

---

[8]Swegheimer also appears to contend that Hopson's testimony was inadmissible under article 38.37 because the testimony did not prove his possession of child pornography beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1). He relies on the facts that Hopson did not present the photo that she testified about to the trial court and that she did not adequately describe the "sexual content" of the photo.

We reject Swegheimer's argument. Even without the photo's admission, the trial court could have reasonably found that Hopson's testimony about the photo's depiction of a young girl's genitals along with Swegheimer's written statement were sufficient to prove that Swegheimer had possessed child pornography. *See* Tex. Penal Code Ann. § 43.25(a)(2) (West Supp. 2017) (stating that "lewd exhibition of the genitals" qualifies as sexual conduct); § 43.26(a)(1) (West 2016) (stating that a person commits an offense by possessing visual material that depicts a child who is engaging in sexual conduct); *Preston v. State*, No. 03-11-00012-CR, 2011 WL 3659089, at *1 (Tex. App.—Austin Aug. 16, 2011, no pet.) (mem. op.) (affirming a trial court's revocation of community supervision based on the defendant's admission that he viewed child pornography even though the trial court did not admit the images that the defendant viewed); *see also Terlecki v. Commonwealth*, 65 Va. App. 13, 20–23, 772 S.E.2d 777, 780–82 (2015) (holding that testimony from someone who had seen images of child pornography on a defendant's computer along with a defendant's admissions were sufficient to prove possession of child pornography even though the trial court did not admit the images).

9

makes a rule 403 objection to evidence that would otherwise be admissible under article 38.37, the trial court must balance the evidence's probative value against its danger of unfair prejudice), *cert. denied*, 137 S. Ct. 495 (2016).  Only "unfair" prejudice provides the basis for exclusion of relevant evidence; such prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.  *Karnes v. State*, 127 S.W.3d 184, 191 (Tex. App.—Fort Worth 2003, pet. ref'd), *cert. denied*, 556 U.S. 1241 (2009).

Rule 403 favors the admission of relevant evidence and presumes that relevant evidence is more probative than prejudicial.  *See Sanders v. State*, 422 S.W.3d 809, 815 (Tex. App.—Fort Worth 2014, pet. ref'd); *see also Johnson v. State*, 490 S.W.3d 895, 911 (Tex. Crim. App. 2016) (explaining that rule 403 should be "used very sparingly" to exclude relevant evidence in sexual assault cases).  When we analyze a trial court's rule 403 decision, we consider the probative value of the evidence; the potential of the evidence to impress the jury in some irrational, indelible way or to suggest a decision on an improper basis; the time the proponent needs to develop the evidence; and the proponent's need for the evidence.  *Sanders*, 422 S.W.3d at 815; *see Kirk v. State*, 421 S.W.3d 772, 782 (Tex. App.—Fort Worth 2014, pet. ref'd) (adding that we should consider the tendency of the evidence to confuse or distract the jury from the main issues and the tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the evidence's probative force).

10

We review a trial court's rule 403 ruling for an abuse of discretion. *Gonzales v. State*, 477 S.W.3d 475, 481 (Tex. App.—Fort Worth 2015, pet. ref'd). We will reverse the rule 403 ruling rarely because the trial court is in a superior position than this court to gauge the impact of relevant evidence. *Id.*

Applying the principles explained above, including the presumption of admissibility of relevant evidence, we cannot conclude that the trial court abused its discretion by overruling Swegheimer's rule 403 objections and by admitting evidence of his extraneous bad acts. *See id.*; *Sanders*, 422 S.W.3d at 815. Swegheimer argues, and we acknowledge, that the development of the extraneous offenses comprised a significant portion of the trial. We also acknowledge, as Swegheimer emphasizes, that the extraneous-offense evidence concerned acts that he committed years before his sexual abuse of Daisy. These facts weigh against the admissibility of the extraneous-offense evidence. *See Fisk v. State*, 510 S.W.3d 165, 173 (Tex. App.—San Antonio 2016, no pet.) (explaining that the remoteness in time of an extraneous offense may weigh against admissibility under article 38.37); *Sanders*, 422 S.W.3d at 815 (stating that one factor in a rule 403 analysis is the time needed to develop the challenged evidence). We also recognize that evidence of a defendant's sexual acts concerning children is inherently inflammatory.[9] *See Gaytan v. State*, 331

---

[9]We note, however, that the trial court instructed the jury to "not let bias, prejudice, sympathy, resentment, or any such emotion play any part in your deliberations." The trial court also instructed the jury that it was not to "consider [the extraneous-offense evidence] to prove that the defendant [was] a bad

S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd); *see also Cox v. State*, 495 S.W.3d 898, 908 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (cautioning that the inherently inflammatory nature of such evidence does not automatically render the evidence inadmissible).

But the trial court could have reasonably found that the evidence's probative value and the State's need for the evidence were high. Given Daisy's delayed outcry of Swegheimer's abuse, the State had no physical or scientific corroborative evidence, and the case therefore hinged on a "he said, she said" swearing match. The legislature enacted article 38.37 to address this precise circumstance. *See Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.— Texarkana 2015, pet. ref'd); *see also Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) ("The special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts."). The trial court could have reasonably determined that evidence of Swegheimer's acts with Mary and Tara was probative because the evidence showed his sexual aggression toward underage girls in his

person and for this reason was likely to commit the charged offense." We generally presume that a jury follows a trial court's instructions. *Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd).

We also note that while the extraneous-offense evidence was inflammatory, it was no more inflammatory than Daisy's description of the sexual abuse that Swegheimer committed against her. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (explaining that the extraneous offense's inflammatory effect is lessened when it is no more serious than the charges alleged).

12

household (similar to Daisy, whom he babysat regularly) and rebutted his defensive theories that Daisy had fabricated the abuse and that he had rejected her sexual advances toward him. *See Gaytan*, 331 S.W.3d at 227–28 (holding that evidence that a defendant had sexually abused two other children in a "remarkably similar" way to the abuse of the complainant was "directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"); *see also Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating that evidence of prior sexual abuse of children is "especially probative" of a defendant's propensity to commit sexual assault). Likewise, the trial court could have reasonably found that evidence of Swegheimer's possession of child pornography was probative because it showed his sexual interest in children. *See Vajda v. State*, Nos. 09-16-00371-CR, 09-16-00372-CR, 09-16-00378-CR, 2017 WL 6062469, at *6 (Tex. App.—Beaumont Dec. 6, 2017, pet. ref'd) (mem. op., not designated for publication).

Moreover, the trial court could have rationally found that although evidence of the extraneous offenses was prejudicial, it was not unfairly so, because the prejudicial nature arose from the fact that the evidence was probative of Swegheimer's sexual interest in female children and of his propensity to make sexual advances toward underage girls over whom he had supervision. *Cf. Wells*, 2017 WL 6759029, at *6 (explaining that extraneous-offense evidence's prejudicial nature arose "from the fact that it was especially probative of [the defendant's] propensity to prey on underage members of his household").

13

We conclude that the trial court did not abuse its discretion by implicitly weighing the rule 403 factors in favor of admitting Swegheimer's extraneous bad acts. *See* Tex. R. Evid. 403; *Gonzales*, 477 S.W.3d at 481. We overrule his third point.

**The jury charge's language about the extraneous offenses**

In his first and second points, Swegheimer argues that the trial court erred by failing to include certain provisions in the guilt-innocence jury charge. After the parties rested, during a charge conference, the following exchange occurred:

> [DEFENSE COUNSEL]: [W]e request that there be a verdict form to know whether or not the Jury has found [the extraneous offenses] to be true beyond a reasonable doubt.
>
> [THE STATE]: There's nothing that requires or has -- is there any procedure for the Court to submit a verdict form on an offense that's an extraneous offense?
>
> [DEFENSE COUNSEL]: She's -- she's correct on that as far as the law, but we're requesting it -- that the Court do that and that that should be done.
>
> THE COURT: Denied.

Later, outside the jury's presence, Swegheimer asked the trial court to include language in the jury charge that would require the jury to unanimously find that he committed the extraneous bad acts as a condition to the jury considering the acts. With regard to that request, Swegheimer's counsel stated, "That's not the law, but that's what we're believing the law should be, . . . that the Jury has to unanimously find the extraneous offenses also." The trial court overruled Swegheimer's request for language requiring unanimity with regard to

14

the extraneous offenses.  The charge that the court submitted to the jury stated in part,

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment.  The [S]tate offered the evidence for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant, absence of mistake or accident, motive, and intent.  You are not to consider the evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.

In his first point, Swegheimer contends that the trial court erred by refusing to provide a form for the jury to sign to indicate whether it had found beyond a reasonable doubt that he had committed the extraneous offenses.  He argues that article 38.37 contemplates such an express finding by stating that before extraneous-offense evidence may be introduced, the "trial judge must . . . determine that the evidence likely to be admitted at trial will be adequate to support *a finding by the jury* that the defendant committed the separate offense beyond a reasonable doubt."  Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1) (emphasis added).  He asserts, "There is no way to make a finding if there is no paperwork provided, i.e., a finding provision in the verdict form . . . .  By refusing to include such a provision[,] the trial court prevented the jury from doing what is contemplated by the statute."

Swegheimer has not directed this court to any decision in which a court construed article 38.37, section 2-a(1) to require or allow for an explicit jury

15

finding, nor have we found such a decision. The plain language of section 2-a(1) does not require an explicit finding. *See id.*; *see also Prichard v. State*, 533 S.W.3d 315, 319 (Tex. Crim. App. 2017) (explaining that courts must interpret criminal statutes by their plain meaning). We hold that the trial court did not err by overruling Swegheimer's request for a verdict form by which the jury could express its findings on the extraneous offenses. *See Jackson v. State*, 992 S.W.2d 469, 479 (Tex. Crim. App. 1999) ("[A]ppellant contends that the trial court erred in refusing to submit special verdict forms requiring jury findings concerning extraneous offenses. This contention has been decided adversely to appellant's position."); *Matchett v. State*, 941 S.W.2d 922, 937 (Tex. Crim. App. 1996) (holding similarly), *cert. denied*, 521 U.S. 1107 (1997); *Estrada v. State*, No. 14-96-00914-CR, 1998 WL 802320, at *5 (Tex. App.—Houston [14th Dist.] Nov. 19, 1998, pet. ref'd) (not designated for publication) ("A trial court is not required to charge the jury with special verdict forms listing the unadjudicated offenses alleged by the State, even if the charge contains an instruction not to consider an extraneous offense unless the jury believes beyond a reasonable doubt that appellant committed the offense."). We overrule his first point.

In his second point, Swegheimer contends that the trial court erred by refusing to instruct the jury that it could "consider the extraneous offense testimony only if there was unanimous agreement that the extraneous offense[s] had been proven beyond a reasonable doubt." He relies on the principle that the law requires jury unanimity for the elements of charged offenses and for charged

16

sentence-enhancement allegations in all criminal cases. *See Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (explaining that the "jury must be unanimous in finding every constituent element of the charged offense in all criminal cases"); *Valdez v. State*, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007) (applying the unanimity requirement to enhancement allegations). He does not cite authority, however, explicitly supporting the proposition that a jury must unanimously agree about the commission of an uncharged, extraneous offense admitted under article 38.37.

The unanimity requirement generally means that the jury must be unanimous about ultimate issues of guilt, not preliminary factual issues that contribute to a determination of guilt. *See Guerrero-Yanez v. State*, No. 07-14-00143-CR, 2016 WL 2343907, at *3 (Tex. App.—Amarillo Apr. 28, 2016, pet. ref'd) (mem. op., not designated for publication) (citing George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 43.21 (3d. ed. 2011)); *see also Martinez v. State*, 190 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (explaining that a jury must unanimously agree on the elements of an offense but need not agree on the brute facts that prove the elements). Applying that principle, in *Guerrero-Yanez*, the court rejected the appellant's argument that a jury charge was erroneous because it did not require unanimity concerning whether the State had proven extraneous offenses admitted under article 38.37 beyond a reasonable doubt. 2016 WL 2343907, at *3. We agree with the holding in *Guerrero-Yanez*. *See id.*; *see also*

17

*Minniear v. State*, Nos. 10-15-00390-CR, 10-15-00391-CR, 2016 WL 6808946, at *1–2 (Tex. App.—Waco Nov. 16, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that a punishment-phase jury charge that did not require unanimity concerning proof of extraneous offenses was not erroneous); *Lakose v. State*, No. 10-09-00225-CR, 2010 WL 3036490, at *3 (Tex. App.—Waco Aug. 4, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that extraneous offenses admitted during the punishment phase of a trial serve as "additional information" or "foundational matters" and that jurors need not reach unanimous agreement about the proof of such offenses).

We reject Swegheimer's argument that the trial court erred by refusing his request for an instruction that would have required the jury to unanimously agree about his commission of extraneous offenses for any juror to consider them. We overrule his second point.

## Conclusion

Having overruled Swegheimer's three points, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  GABRIEL, KERR, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 29, 2018

18