

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00254-CR

CLINTON RAY SANDERS                                         APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## OPINION

----------

In two points that concern the trial court's admission of evidence over his objections, appellant Clinton Ray Sanders appeals his felony conviction and ten-year sentence for assault against someone with whom he had a dating relationship.[1]  We affirm.

----

[1]*See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A) (West Supp. 2013).

## Background Facts

In October 2012, appellant was dating Krystle, who was living with her sister and appellant's nephew. One night that month, appellant and Krystle went to see appellant's brother, Roy. Appellant, Krystle, and Roy drank alcohol together at Roy's residence before driving Krystle's car to a bar. At the bar, appellant, Krystle, and Roy all drank beer. They left the bar at around midnight.

On their way to Krystle's sister's house, Krystle heard appellant mumble something under his breath, stopped the car in the middle of a roadway, and said something to him. Appellant responded by hitting Krystle's left eye with a closed fist. Roy, who was sitting in the back seat, put his hand around appellant and asked appellant what he was doing. Appellant got out of the car, opened the door to the back seat, punched Roy, and walked away. Roy's head began bleeding.

Krystle and Roy traveled to Krystle's sister's house. Krystle's sister told Krystle to go to a hospital, and she did so. While there, Krystle met with nurses, doctors, and a sheriff's deputy. The deputy took photographs of Krystle's eye, which had become swollen and discolored.[2] Krystle and Roy went to the sheriff's office a few days after the assault to give statements. Photographs taken at that

---

[2]Krystle testified that while she was at the hospital, she was experiencing "probably one of the worst pains [she had] felt." The deputy who took the photographs at the hospital opined that Krystle's injuries were "fresh." He also testified that Krystle appeared to be intoxicated.

2

time showed continued swelling and bruising on Krystle's eye along with blood stains in Krystle's car.

Upon appellant's arrest, he agreed to give an interview concerning Krystle's assault allegation. During the interview, he admitted that he had been to a bar with Krystle and Roy, that he had become intoxicated on the same night, and that he had gotten into an argument with Krystle that night. But appellant said that he did not know about the source of Krystle's black eye and did not remember hitting her.

A grand jury indicted appellant with assaulting Krystle. The indictment alleged that appellant had been previously convicted of assault against a member of his family or household. Appellant retained counsel, elected the jury to assess his punishment if he was convicted, filed a sworn application for community supervision, and pled not guilty. After receiving the parties' evidence and arguments, the jury found appellant guilty. In the punishment phase of the trial, the State proved that appellant had several prior misdemeanor convictions, and appellant produced testimony from his son and his daughter.[3] The jury assessed appellant's punishment at ten years' confinement without recommending community supervision, and the trial court sentenced him accordingly. Appellant brought this appeal.

---

[3]Appellant's son was the victim of appellant's prior assault conviction.

**The Admission of Extraneous Offense Evidence in the Punishment Phase**

In his first point, appellant argues that the trial court erred during the punishment phase of his trial when it allowed the State to introduce evidence of a fifteen-year-old "unprosecuted sexual assault allegation against [a]ppellant by a [twelve-year-old girl] who now denies it ever happened." We review a trial court's admission of evidence over a defendant's objection for an abuse of discretion. *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.); *see Moreno v. State*, 1 S.W.3d 846, 861 (Tex. App.—Corpus Christi 1999, pet. ref'd) ("The trial court has broad discretion in determining admissibility of evidence at the punishment phase of trial."). An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *Sandone*, 394 S.W.3d at 791.

Appellant called his daughter to testify in the punishment phase of the trial. On direct-examination, the daughter testified, among other facts, that she had not seen appellant engage in family violence, that appellant had become depressed and had started drinking when he divorced his wife, and that appellant had various physical problems that impacted his ability to work. At the end of her direct-examination testimony, the daughter asked the jury to place appellant on community supervision.

At the beginning of its cross-examination, the State asked appellant's daughter about a written statement that she had made concerning appellant in

4

1998, when she was twelve years old. When the State offered the statement for admission, appellant objected on the grounds that he had not received notice of it and that its admission would be more prejudicial than probative. Although appellant's daughter proclaimed outside of the jury's presence that the statement was "a lie," the trial court overruled appellant's objection and admitted the statement. The statement, which appellant's daughter testified that she did not write (but did not dispute that she adopted), read,

> Well about 2 weeks ago I [fell] asleep on the couch and my daddy came up and . . . sat by me and then I felt a poke on my vagina and so I got up and use[d] the restroom and thought well he did it accidently and [fell] back [asleep] and then I felt something rubbing on my vagina and slapped his hand off he did it again so I sat up and he said "Let me finish I promise it will feel good[.]" . . . I said no and I ran to my room and locked the door and then he came back there and knocked on the door and said let me in and I said . . . no and I've been scared to tell [anybody] because I was scared.

After a prosecutor published the statement to the jury by reading it, on redirect-examination, appellant's daughter testified that she had "made up" the sexual allegation against appellant because she had wanted her mother and father to get a divorce. Unambiguously, the daughter testified that the incident described in the statement did not happen.

"Code of Criminal Procedure Article 37.07, Section 3(a) governs the admissibility of evidence during the punishment phase of a non-capital trial." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (footnote omitted). Article 37.07 states that as relating to a defendant's punishment, a trial court may admit evidence of "any matter the court deems relevant to sentencing," including

5

the defendant's character or evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2013); *see also Arnolie v. State*, No. 01-11-00348-CR, 2012 WL 1143591, at *4 (Tex. App.—Houston [1st Dist.] Apr. 5, 2012, no pet.) (mem. op., not designated for publication) ("By definition, evidence admitted under article 37.07, section 3 need not be relevant to appellant's *guilt* for the offense for which he has already been convicted."). As the court of criminal appeals has explained,

> The Legislature has expressly provided that "relevant" punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony *as well as extraneous-offense evidence.* Because there are no discrete fact issues at the punishment phase of a non-capital trial, we have ruled that the definition of "relevant," as stated in Rule 401 of the Texas Rules of Evidence, does not readily apply to Article 37.07. What is "relevant" to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of *what is helpful to the jury* in determining the appropriate sentence for a particular defendant in a particular case."

*Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (emphasis added) (footnotes omitted) (quoting *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006)). Evidence of a defendant's prior, extraneous offenses may be admissible under article 37.07 to show whether a defendant is a good candidate for community supervision. *See id.* at 296.

6

On appeal, appellant first argues that the trial court should not have admitted his daughter's statement because he did not receive notice of the State's intent to offer it before trial. Article 37.07 states,

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.[4] . . . The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g); *see Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998) (holding that the State was not obligated to give notice under article 37.07 because the defendant filed a motion for the court to order the State to give notice rather than directly asking the State to give notice); *President v. State*, 926 S.W.2d 805, 807–08 (Tex. App.—Austin 1996, pet. ref'd) (holding similarly); *see also Ewing v. State*, 157 S.W.3d 863, 867 (Tex. App.—Fort Worth 2005, no pet.) ("[R]egardless of any interpretation the State may have assigned to Appellant's discovery motion, the motion did not comply with the requirements of article 37.07. As a result, the State had no duty to provide notice of its intent to present evidence of extraneous crimes or bad acts.").

Appellant states in his brief that he objected to lack of notice, but he does not direct us to any part of the record in which he requested notice of extraneous offenses before the State offered his daughter's statement, and we have found

---

[4]Rule 404(b), like article 37.07, expressly conditions the State's obligation to give notice of extraneous offenses upon a defendant's request for notice. *See* Tex. R. Evid. 404(b).

none. Thus, based on the plain language of article 37.07 and on precedent applying the notice provision of that article, we conclude that appellant was not entitled to notice of the State's intent to introduce his daughter's statement, and we overrule that part of his first point.

Next, citing rule of evidence 403, appellant argues that the evidence of his daughter's statement was more prejudicial than probative. Rule 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Even if punishment evidence is otherwise admissible under article 37.07, it may be excludable under rule 403. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999) (applying rule 403 and emphasizing that "it is *unfair* prejudice that must substantially outweigh the probative value of the evidence to render relevant evidence inadmissible").

A rule 403 analysis should include, but is not limited to, considering the probative value of the evidence; the potential of the evidence to impress the jury in some irrational, indelible way or to suggest a decision on an improper basis; the time the proponent needs to develop the evidence; and the proponent's need for the evidence. *Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000); *see Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "When a trial court tests and determines that the balance is a close one, it should favor admission, in keeping with the presumption of admissibility of relevant

8

evidence." *Cox v. State*, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996), *pet. dism'd*, 951 S.W.2d 5 (Tex. Crim. App. 1997).

We recognize that evidence relating to a sexual offense with a child and to an offense that is remote in time to the charged offense carries the potential for unfair prejudice. But the evidence concerning appellant's daughter's statement was relevant because it helped define appellant's character for the jury; showed another example of a criminal act that appellant may have committed against a member of his family or household; and helped strengthen the establishment of a pattern of serious, continuing criminal conduct that may have informed the jury's decision about whether to place appellant on community supervision, as his daughter had requested. *See McClure v. State*, 269 S.W.3d 114, 120 (Tex. App.—Texarkana 2008, no pet.) ("A person's history of violating the law is undoubtedly a relevant factor for a jury to consider when assessing a sentence because it relates to the defendant's character."). Although the statement described an event that occurred approximately fifteen years before the trial of appellant's assault against Krystle,[5] the statement was made within approximately two weeks of the event that it described, while the event was apparently fresh in appellant's daughter's mind. The State spent little time in

---

[5]Section 3(a)(1) of article 37.07 does not contain a time limitation for the admission of extraneous offenses or bad acts relating to a defendant's punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Fowler v. State*, 126 S.W.3d 307, 311 (Tex. App.—Beaumont 2004, no pet.) ("The statute does not provide a time restriction.").

9

front of the jury asking about the statement. And although the effect of the evidence on the jury may have been indelible, it was not irrational, given that the legislature has expressly permitted evidence of unadjudicated extraneous crimes and bad acts to allow juries to tailor appropriate punishments. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Fowler*, 126 S.W.3d at 311 ("Evidence of defendant's prior assaults certainly had a tendency to cause a jury to increase his punishment. But that was its legitimate purpose.").

To the extent that appellant argues on appeal that the trial court should not have admitted the statement because his daughter had retracted the allegation contained in the statement or because the allegation was not proven beyond a reasonable doubt to be true, appellant did not make such an objection in the trial court. Our sister courts have distinguished complaints about the truthfulness of an extraneous offense from complaints related to the balancing of such an offense's probative value and unfair prejudice. *See, e.g.*, *Chambers v. State*, No. 01-10-00317-CR, 2011 WL 2652252, at *1–2 (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that an objection under rule 403 did not preserve error on an appellate complaint that the State did not prove an extraneous offense beyond a reasonable doubt as required by section 3(a)(1) of article 37.07); *Kucel v. State*, No. 11-97-00071-CR, 1998 WL 34193983, at *1 (Tex. App.—Eastland June 4, 1998, no pet.) (not designated for publication) (same). Appellant did not make an objection under the beyond-a-reasonable-doubt standard of article 37.07, section 3(a)(1), nor did

10

he inform the trial court that he was linking his rule 403 objection to an argument that the State had not adequately proved the extraneous offense contained in the statement.

Also, to the extent that the trial court may have been put on notice before admitting the statement that the statement's probative value was reduced by the fact that appellant's daughter had retracted it, the court could have reasonably concluded that any unfair prejudice would be similarly reduced by her availability to testify that the event described in the statement did not happen. In other words, before admitting the statement, the trial court could have rationally considered that by comparing appellant's daughter's statement to her recanting testimony, the jury, as the sole judge of her credibility,[6] would be equipped to evaluate and confirm whether the statement was probative of the facts it contained and was therefore pertinent to assessing appellant's punishment.[7] *See Gigliobianco*, 210 S.W.3d at 641 (stating that in its balancing under rule 403, a trial court may consider whether the evidence could be given "undue weight by a jury that *has not been equipped to evaluate the probative force* of the evidence") (emphasis added).

---

[6]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979).

[7]In its charge on punishment, the trial court instructed the jury that it could not consider evidence of extraneous crimes for any purpose unless it found beyond a reasonable doubt that appellant had committed them. In the event that the jury believed the recantation and disregarded the statement, the statement's admission could not have been harmful. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011).

11

For all of these reasons, we cannot conclude that the trial court acted outside the zone of reasonable disagreement when it implicitly determined[8] that the probative value of admitting appellant's daughter's statement was not substantially outweighed by the danger of any unfair prejudice. Therefore, we cannot say that the trial court abused its discretion by admitting the evidence. *See* Tex. R. Evid. 403; *Sandone*, 394 S.W.3d at 791; *see also Bain v. State*, 115 S.W.3d 47, 50 (Tex. App.—Texarkana 2003, pet. ref'd) (holding that a trial court did not err by admitting evidence of a defendant's sexual offense with a child in the punishment phase of an aggravated robbery trial); *Rodriguez v. State*, No. 03-95-00734-CR, 1996 WL 548156, at *2 (Tex. App.—Austin Sept. 25, 1996, no pet.) (not designated for publication) (holding that a trial court did not abuse its discretion by admitting punishment evidence of a sexual offense committed by the defendant even though the alleged victim had recanted). We overrule appellant's first point.

### Confrontation, Hearsay, and Harm

In his second point, appellant contends that the trial court erred by admitting a recording of conversations between a 911 operator and a hospital employee who was responding to Krystle's injuries. During the guilt phase of

---

[8]Appellant argues that the trial court "seemed to gloss over a balancing test, if it did one at all. It did not state that one had been done." But we presume that the trial court conducted a balancing test under rule 403 even though the trial court did not state on the record that it did so. *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Luxton v. State*, 941 S.W.2d 339, 343 (Tex. App.—Fort Worth 1997, no pet.).

appellant's trial, the State sought the admission of its Exhibit 31, which comprised recordings of two short conversations between Dotti, who was an employee at the hospital, and a 911 operator. Appellant objected to the exhibit's admission on the grounds that it contained hearsay[9] and that its admission would violate his right to confrontation.[10] The trial court overruled appellant's objection and admitted the exhibit. The exhibit, which the State played for the jury, contains a statement from Dotti that an assault had occurred when Krystle was punched in her face by her boyfriend.

On appeal, appellant contends that the trial court erred by admitting Exhibit 31 because it contained Dotti's testimonial evidence and because Dotti was unavailable for cross-examination at trial. Citing a decision from the United States Supreme Court that resolved two related cases, appellant argues that Dotti's statements to the 911 operator were testimonial because she was "reporting what had already happened and not what was happening." *See Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006).

When a trial court admits evidence that violates hearsay rules or a defendant's right of confrontation, we must determine whether the admission caused harm. *See* Tex. R. App. P. 44.2 (setting forth the standards of harm required for reversal based on constitutional and nonconstitutional errors); *Davis*

---

[9]*See* Tex. R. Evid. 801(d), 802.

[10]*See* U.S. Const. amend. VI.

*v. State*, 268 S.W.3d 683, 706–07 (Tex. App.—Fort Worth 2008, pet. ref'd) ("In applying a rule 44.2(a) harm analysis to hearsay erroneously admitted over the defendant's Confrontation Clause objection, the Court of Criminal Appeals has instructed us that if the verdict or punishment would have been the same absent the error then the error is harmless.") (citing *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007)); *see also Stovall v. State*, No. 02-11-00174-CR, 2012 WL 4010418, at *11 (Tex. App.—Fort Worth Sept. 13, 2012, pet. ref'd) (mem. op., not designated for publication) (describing the harm analysis applicable to the improper admission of testimonial statements). If error is constitutional, such as the violation of a defendant's right to confrontation, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R. App. P. 44.2(a).

In applying the "harmless error" test for constitutional error, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that

particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)).

In his brief, appellant correctly summarizes what Exhibit 31 conveyed as "being that [Krystle] had been assaulted by her boyfriend, and where it occurred." Given the uncontroverted other, unobjected-to evidence establishing these facts and considering appellant's counsel's concessions in his opening statement and in his closing argument, we cannot conclude that the admission of Exhibit 31, even if erroneous, caused any harm. Krystle plainly testified at trial that appellant had hit her with a closed fist in her eye; she stated, "I felt as if I was being hit like a grown man would be hit." The jury received several photographs showing the extent of Krystle's injury to her left eye hours after the offense and days after the offense. Also, the jury received photographs of Krystle's blood-splattered car. Next, the trial court admitted Krystle's medical records from her visit to the hospital after the assault. Along with containing other facts, the records labeled Krystle's admitting diagnosis as an alleged assault and stated that she had complained of being punched in the face by her boyfriend.[11]

---

[11]In other words, the unobjected-to medical records contained the same essential information as Dotti's 911 conversations.

Finally, appellant admitted at trial that he had punched Krystle. In appellant's opening statement, counsel stated,

> Listen to the explanation, and especially of [Krystle], of why this whole thing and how this whole thing happened. And look at the mental states of . . . all the parties involved. That's just what I want you to keep your eyes open for. *Obviously she got hit.* There's more to it than that, and I'm going to ask you to keep your eyes open for the more part. [Emphasis added.]

Similarly, in his closing argument, appellant's counsel stated, "My client basically can't deny that he hit Krystle . . . ." Counsel focused the closing argument upon whether Krystle might have provoked appellant and whether appellant acted with the requisite mental state for assault.[12] Dotti's recorded statements in Exhibit 31 could not have impacted the answers to either of those questions.

Thus, assuming, without deciding, that the trial court violated appellant's right of confrontation by admitting Exhibit 31, we hold beyond a reasonable doubt that the error could not have contributed to his conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Davis*, 268 S.W.3d at 706–07. Likewise, we necessarily conclude that the record does not establish harm under the more relaxed

---

[12]Counsel argued in part,

> We have no evidence of his state of mind at the time this happened, why he did this. If anybody should have, that is [Krystle], and she -- she either didn't or couldn't give it to you. And that's critical, because if . . . he didn't know what he was doing at the moment, it's not a crime. That's the bottom line. Whether he was waking from a dream or suffering from some 30-second insanity, who cares, things happen. But that's where – that's where I'm left. I don't have a reason, I don't have a state of mind for Mr. Sanders.

standard for nonconstitutional error, which applies to appellant's hearsay objection. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Davis*, 268 S.W.3d at 709. We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

GARDNER, J., filed a dissenting opinion.

PUBLISH

DELIVERED: January 30, 2014

17