

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00242-CR

_____

CHESTER LEE FINNEY, JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR18821

Before Kerr, Pittman, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Chester Lee Finney, Jr. appeals his convictions for aggravated sexual assault of a child and for indecency with a child by exposure. In two issues, he contends that the trial court abused its discretion by admitting evidence of extraneous bad acts that he committed before and after the offenses at issue. We hold that the trial court did not abuse its discretion by admitting the extraneous-act evidence, and we affirm the trial court's judgment.

### Background

C.F. (Carol) has two children: T.T. (Tammy) and K.T. (Katie).[1] Carol met Finney on Facebook in 2013, and that year, he moved into a two-bedroom apartment with her, Tammy, and Katie. At the time, Tammy was in sixth grade, and Katie was in first grade.

One day in 2013, Tammy stayed home from school because she was sick. Carol went to work. According to Tammy's testimony, after she fell asleep on Finney's bed, she awoke to Finney fondling her breasts. While Tammy and Finney both had their clothes on, she also felt his erect penis pressing against her. Finney asked Tammy, "Isn't this what you wanted?" Tammy got out of the bed and locked herself in a bathroom. After Carol returned home from work, Tammy, without

_____

[1]To protect the anonymity of persons associated with this appeal, we use pseudonyms. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

providing every detail, accused Finney of doing something improper. Carol confronted Finney, asking him, "What the hell have you done to my child?" Finney yelled that he had not done anything. According to Carol, when she pressed Tammy for more details, Tammy said that nothing had happened. Finney continued to live with Carol and her daughters.

Later that year, while Carol, Finney, and the girls were spending a weekend at Carol's sister's house in Wise County, Carol went to work while leaving Finney, the girls, and several other people at the house. According to Katie, she fell asleep in a bed, and when she awoke, she was lying on top of Finney with her head on his chest. Finney was touching her sexual organ with one hand[2] while holding his penis with his other hand. Katie ran away from Finney and did not immediately tell anyone what had occurred.

Carol, Finney, and the girls eventually moved to Lubbock. While they lived there, one night in August 2014, Finney became enraged while accusing Carol of attempting to hurt him by driving recklessly. He threw things, shoved her multiple times, hit her arm with a closed fist, and kept her and the girls in a house when they tried to get away.[3] He told Carol that he would "release all of his rage and [she] would feel the wrath of it." After he trapped Carol and the girls in a bedroom, he knocked a

---

[2]Katie testified that Finney had pulled her shorts and her panties to the side.

[3]Carol testified that she and the girls "tried to run to each of the doors multiple times and get out[,] . . . and he would drag us back and tell us, no, you're not leaving."

door partially off its hinges and said, "[T]he only way out of this is death." The girls begged Finney to let them go, but he refused. Tammy managed to reach a phone and call Carol's sister, who called 9-1-1. When Finney saw that Tammy had a phone, he twisted her wrist, took the phone from her, and threw it into a wall. When he heard the 9-1-1 dispatcher call back, he took the phone and began talking to the dispatcher. Aided by that distraction, Carol and the girls left the house. Finney followed them outside and said to Carol, "[B]itch, I'm going to jail. I hope you're happy." Lubbock police officers arrested Finney, and he eventually pleaded guilty to committing family violence against Carol. According to Carol, this occasion was the first (and only) time that Finney physically abused her, although it was not the first time they had fought. After his release from confinement following his arrest, Finney again began living with Carol and the girls.

In June 2015, after Carol and Finney finally separated, Tammy provided details to Carol about Finney's sexual abuse. Carol reported the abuse to the police, and Tammy gave a forensic interview and began participating in trauma counseling. A Tarrant County grand jury indicted Finney for committing sexual crimes against Tammy.

Later, Katie asked Tammy why she was going to individual counseling. Tammy told Katie that Finney had abused her,[4] and Katie disclosed to Carol that Finney had

---

[4]According to Carol, when Katie asked Tammy why Tammy was going to individual counseling, Tammy told Katie about sexual acts that Finney had engaged in

4

likewise sexually abused her while they had been staying at Carol's sister's house. Carol again contacted the police, and Katie gave a forensic interview.

For Finney's abuse of Katie, a Wise County grand jury indicted him for aggravated sexual assault and for indecency with a child by exposure.[5] Before trial, the State gave Finney notice of its intent to offer evidence of Finney's extraneous bad acts. The State informed Finney that among other acts, it planned on introducing evidence of his sexual abuse of Tammy that occurred before his abuse of Katie and of his physical abuse of Carol—the "Lubbock incident"—that occurred later. Finney filed a motion seeking exclusion of that evidence.

Before the trial began, the trial court held a hearing on the admissibility of evidence of the bad acts. Finney argued that evidence of his alleged sexual abuse of Tammy was inadmissible under rule of evidence 403 because the evidence was unduly prejudicial. He explained,

> It's a pending case that hasn't been tried. It's going to be -- because of the very nature of it, it's going to -- the jury is going to give more weight to it and . . . not understand it.
>
> And finally, one of the factors the Court looks at in considering 403 is the time that would be consumed by the Court, and basically what we're talking about here, your Honor, is litigating a second case with a

with her and said that Finney "probably would have raped [her]" had she not woken up. Katie testified that during that conversation, Tammy had said that Finney had done "something bad" but had not provided details of Finney's abuse.

[5]*See* Tex. Penal Code Ann. §§ 21.11(a)(2)(A), 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2018).

second victim in a different county and everything that's entailed with that.

The State argued that Finney's alleged abuse of Tammy was probative and admissible under rule 403 because the abuse proved his character for committing sexual crimes and because his crime against Tammy was factually similar to his crime against Katie.

Concerning the "Lubbock incident," Finney argued that the evidence was irrelevant because his physical abuse was against Carol, not the children; because the incident occurred after his alleged crimes against Katie; and because it constituted a single instance of physical violence rather than establishing a history of violence. The State argued that evidence of the abuse was relevant because it showed Finney's state of mind concerning his familial relationships and because it explained the "delayed outcry of the children. They were scared of [Finney], as they should have been."

The trial court overruled Finney's objections to evidence concerning both extraneous bad acts. At trial, the jury heard evidence about those acts. After the jury received all of the parties' evidence and arguments, it convicted Finney of both charges. The trial court sentenced him to confinement for life for the aggravated sexual assault conviction and to twenty years' confinement for the indecency with a child conviction. He appeals.

## Evidentiary Rulings

On appeal, in two issues, Finney contends that the trial court erred by admitting evidence of his alleged abuse of Tammy and of the "Lubbock incident." He

6

argues that evidence of his alleged acts with Tammy was inadmissible under rule of evidence 403 because the evidence had minimal probative value, was inflammatory, potentially confused the jury "as to which assault [he] was on trial for," required significant time to develop, encouraged the jury to reach a verdict based on anger or sympathy, and resulted in an unfair trial. *See* Tex. R. Evid. 403. Finney contends that the trial court abused its discretion by admitting evidence of the "Lubbock incident" because it was irrelevant. He reasons that the incident occurred after his abuse against Katie and could not, therefore, logically explain her delay in reporting the abuse. He also asserts that the evidence was unduly prejudicial.

**Standard of review**

We review a trial court's decision to admit evidence, including evidence of a defendant's extraneous bad acts, for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Williams v. State*, 513 S.W.3d 619, 636 (Tex. App.—Fort Worth 2016, pet. ref'd). Under the abuse-of-discretion standard, we uphold the trial court's ruling as long as it is within the "zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343–44. As long as an evidentiary ruling is correct on any applicable legal theory, we will uphold it. *Id.* "The bare fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).

7

**Finney's alleged abuse of Tammy**

Finney first contends that the trial court erred by admitting evidence concerning his alleged sexual acts with Tammy because the evidence was more unfairly prejudicial than probative under rule 403. *See* Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). He appears to acknowledge that apart from his argument under rule 403, the evidence was otherwise admissible under article 38.37 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (West 2018).

We recently explained the relationship between the general admissibility of character-conformity evidence in child-sex-crime cases under article 38.37 and a trial court's discretionary exclusion of such evidence under rule 403:

> Article 38.37 . . . creates an exception to the general exclusion in criminal trials of character evidence by proof of extraneous offenses. *See* Tex. Code Crim. Proc. Ann. art. 38.37; Tex. R. Evid. 404(a)(1), (b)(1); *Harris v. State*, 475 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see also Gonzales v. State*, 477 S.W.3d 475, 480 (Tex. App.—Fort Worth 2015, pet. ref'd) ("Although the general rule is that a person may not be convicted based on a claim of character conformity, the legislature has changed the rules when there is an allegation of a sexual offense against a child." (footnote omitted)). Under article 38.37, when a defendant is on trial for indecency with a child or for aggravated sexual assault of a child (among other crimes), evidence of the defendant's extraneous sexual crimes "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of

8

the defendant." Tex. Code Crim. Proc. Ann. art. 38.37, § 2(a)(1)(C), (E), (b). . . .

. . . .

. . . Even if evidence is admissible under article 38.37, "it is subject to exclusion if its probative value is substantially outweighed [by the danger of unfair prejudice] and if rule 403 is raised in the trial court." *Wells v. State*, No. 02-16-00209-CR, 2017 WL 6759029, at *5 (Tex. App.—Fort Worth Dec. 28, 2017, pet. [ref'd]); *see Bezerra v. State*, 485 S.W.3d 133, 140 (Tex. App.—Amarillo 2016, pet. ref'd) (explaining that when a defendant makes a rule 403 objection to evidence that would otherwise be admissible under article 38.37, the trial court must balance the evidence's probative value against its danger of unfair prejudice), *cert. denied*, 137 S. Ct. 495 (2016). Only "unfair" prejudice provides the basis for exclusion of relevant evidence; such prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Karnes v. State*, 127 S.W.3d 184, 191 (Tex. App.—Fort Worth 2003, pet. ref'd), *cert. denied*, 556 U.S. 1241 (2009).

Rule 403 favors the admission of relevant evidence and presumes that relevant evidence is more probative than prejudicial. *See Sanders v. State*, 422 S.W.3d 809, 815 (Tex. App.—Fort Worth 2014, pet. ref'd); *see also Johnson v. State*, 490 S.W.3d 895, 911 (Tex. Crim. App. 2016) (explaining that rule 403 should be "used very sparingly" to exclude relevant evidence in sexual assault cases). When we analyze a trial court's rule 403 decision, we consider the probative value of the evidence; the potential of the evidence to impress the jury in some irrational, indelible way or to suggest a decision on an improper basis; the time the proponent needs to develop the evidence; and the proponent's need for the evidence. *Sanders*, 422 S.W.3d at 815; *see Kirk v. State*, 421 S.W.3d 772, 782 (Tex. App.—Fort Worth 2014, pet. ref'd) (adding that we should consider the tendency of the evidence to confuse or distract the jury from the main issues and the tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the evidence's probative force).

. . . We will reverse the rule 403 ruling rarely because the trial court is in a superior position . . . to gauge the impact of relevant

evidence. [*Gonzales v. State*, 477 S.W.3d 475, 481 (Tex. App.—Fort Worth 2015, pet. ref'd).]

*Swegheimer v. State*, No. 02-17-00095-CR, 2018 WL 1528477, at *2–5 (Tex. App.—Fort Worth Mar. 29, 2018, pet. ref'd) (mem. op., not designated for publication).

Under these principles, we cannot conclude that the trial court abused its discretion by admitting evidence of Finney's alleged abuse of Tammy. *See id.* at *5. The trial court could have reasonably found that the probative value of the evidence and the State's need for it were high because given Katie's delayed outcry, the "State had no physical or scientific corroborative evidence, and the case therefore hinged on" a swearing match. *See id.*; *Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.—Texarkana 2015, pet. ref'd) (explaining that the Legislature's intent in enacting article 38.37 was to allow for the corroboration of a child's testimony when little or no physical evidence exists); *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) ("The special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts.").

Moreover, like in *Swegheimer*, the trial court could have reasonably determined that Finney's acts with Tammy were probative of his acts against Katie because they "showed his sexual aggression toward [an] underage girl[] in his household." 2018 WL 1528477, at *5; *see also Burgess v. State*, No. 05-17-00271-CR, 2018 WL 3322886, at *4 (Tex. App.—Dallas July 6, 2018, no pet. h.) (mem. op., not designated for publication) (holding that an extraneous bad act had probative value in a case concerning sexual

10

abuse of a child because the bad act showed the appellant's sexual interest in children); *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating that evidence of prior sexual abuse of children is "especially probative" of a defendant's propensity to commit sexual assault).

Finally, as the State argues, evidence of Finney's abuse of Tammy was probative of his acts against Katie because of the similarity of circumstances in which the abuse occurred: in each case, Finney fondled a sleeping child while lying in bed with her and while Carol was away from the home. *See Gaytan v. State*, 331 S.W.3d 218, 227–28 (Tex. App.—Austin 2011, pet. ref'd) (holding that evidence that a defendant had sexually abused two other children in a "remarkably similar" way to the abuse of the complainant was "directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"); *see also Holcomb v. State*, No. 09-16-00198-CR, 2018 WL 651228, at *4 (Tex. App.—Beaumont Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication) (noting the "substantial similarities between the charged offense and the extraneous offense" when in "both instances, the teen-aged girl was sleeping on a couch in the common area of the house, and Holcomb touched the child sexually while she was asleep, then stopped when she protested").

Finney contends that the probative value of "propensity evidence" is inherently low and relies on historical jurisprudential principles that have generally required the exclusion of such evidence. *See generally* Tex. R. Evid. 404(a)(1); *Boyd v. United States*, 142 U.S. 450, 458 (1892) ("However depraved in character, and however full of crime

their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged."). But in enacting article 38.37, the Legislature carved out an exception to the general exclusion of such evidence on the basis that such evidence has inculpatory value in child-sex-crime cases; we decline to second-guess the Legislature's decision in that regard. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b); *Gonzales*, 477 S.W.3d at 480; *see also Bradshaw v. State*, 466 S.W.3d at 883 ("The statute recognizes that evidence of this type is, by definition, propensity, or character evidence. It is admissible notwithstanding those characteristics.").

We acknowledge that like in *Swegheimer*, the development of evidence concerning Finney's acts with Tammy comprised a significant portion of the trial. 2018 WL 1528477, at \*5. This fact weighed against admissibility. *See id.* (citing *Sanders*, 422 S.W.3d at 815). We also recognize, as Finney argues, that evidence of a defendant's sexual acts with children is inflammatory,[6] but the inflammatory nature does not automatically render the evidence inadmissible. *See id.* (citing *Cox v. State*, 495 S.W.3d 898, 908 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd)).

---

[6]We note, however, that the evidence of the extraneous offense (Finney's alleged abuse of Tammy in which he touched her breasts over her clothes) was likely less inflammatory to the jury than evidence of the charged offense (his assault of Katie in which he pulled aside her clothes and touched her bare sexual organ while holding his penis). *See Rivera v. State*, 269 S.W.3d 697, 706 (Tex. App.—Beaumont 2008, no pet.) (comparing the seriousness of extraneous bad acts and the charged offenses).

12

Considering all of the factors described above and relying on rule 403's presumption of admissibility, we cannot conclude that the trial court abused its discretion by admitting evidence of Finney's alleged abuse of Tammy. *See* Tex. R. Evid. 403; *Swegheimer*, 2018 WL 1528477, at *4–5. We overrule his first issue.

**The "Lubbock incident"**

In his second issue, Finney argues that the trial court abused its discretion by admitting evidence of the "Lubbock incident." Finney argues that the evidence was irrelevant because the incident occurred well after his abuse of Katie and therefore could not explain her delayed outcry, which was one theory of relevance that the State asserted at trial. He also contends that the evidence was "extremely prejudicial" because it portrayed him as a violent criminal and exhibited his violence towards children. The State responds by arguing that the evidence "illuminated the increasingly fraught relationships within the family, was probative to explain why [Katie] did not immediately outcry, and explained why the family was going to therapy, which indirectly led to [Katie's] outcry."

We conclude that the admissibility of the "Lubbock incident" did not depend on whether it explained Katie's delayed outcry. Rather, as asserted by the State in the trial court, the evidence, which proved a bad act committed by Finney in trapping and threatening Katie (along with with Carol and Tammy), was admissible under article 38.37 to show "the state of mind of the defendant" and "the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. Ann. art.

13

38.37, § 1(b)(1)–(2). Under section 1(b) of article 38.37, jurors may consider extraneous acts showing the defendant's state of mind and the defendant's relationship with the child to explain how someone in a position of trust could commit a crime against the child. *Ware v. State*, 62 S.W.3d 344, 353 (Tex. App.—Fort Worth 2001, pet. ref'd). Article 38.37 recognizes that most jurors are reluctant to believe that adults in parental positions "would commit sexual or physical crimes against . . . children" and permits the admission of evidence to show "that a peculiar relationship exists" between the defendant and a child, including the defendant's assertion of dominance over the child. *Id.* In other words, the defendant's extraneous acts are relevant to show how "in a position demanding care and guidance of a related person, [the defendant] has failed in such duty and has adopted an unnatural attitude relative thereto." *Johns v. State*, 236 S.W.2d 820, 823 (Tex. Crim. App. 1951); *see Pinson v. State*, No. 08-02-00327-CR, 2004 WL 1693551, at *5 (Tex. App.—El Paso July 29, 2004, pet. ref'd) (mem. op., not designated for publication) ("Other acts of misconduct between the defendant and the child victim are relevant to show how a person in a position of authority, custody, or care of a young child has developed an unnatural attitude and relationship toward that child to explain the charged act—an act that would otherwise seem wholly illogical and implausible to the average juror."); *see also Ayala v. State*, Nos. 02-06-00110-CR, 02-06-00111-CR, 2007 WL 1377731, at *3 (Tex. App.—Fort Worth May 10, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that in a trial for aggravated sexual assault of a child and

14

indecency with a child, the trial court did not abuse its discretion by admitting, under article 38.37, evidence concerning the defendant's physical abuse of the child); *Kenley v. State*, No. 02-06-00127-CR, 2006 WL 2925159, at \*2–3 (Tex. App.—Fort Worth Oct. 12, 2006, no pet.) (mem. op., not designated for publication) (holding that in a child-sex-crime prosecution, a trial court did not abuse its discretion by admitting evidence of the defendant's physical abuse of the child because the evidence "provided context about the previous and subsequent relationship between" them).

Applying article 38.37, we conclude that the trial court did not abuse its discretion by admitting evidence of the "Lubbock incident" because the evidence showed Finney's state of mind, including his assertion of dominance over Katie,[7] and proved the "subsequent relationship between" him and Katie. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b)(1)–(2); *Ware*, 62 S.W.3d at 353; *see also Kenley*, 2006 WL 2925159, at \*2–3; *Comeaux v. State*, Nos. 14-03-01223-CR, 14-03-01224-CR, 14-03-01225-CR, 2005 WL 1149795, at \*6 (Tex. App.—Houston [14th Dist.] May 17, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that evidence of an extraneous offense was admissible to show that the "charged offenses did not occur in an otherwise healthy relationship"). To the extent that Finney objected in the trial court and argues on appeal that the "Lubbock incident" was inadmissible because it was not relevant, we hold that the trial court did not abuse its discretion by overruling

---

[7]Finney acknowledges on appeal that the evidence showed, in part, that he dragged the girls back into the house when they tried to leave.

the objection. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b)(1)–(2); *Williams*, 513 S.W.3d at 636. We overrule Finney's second issue to that extent.

Finally, to the extent that Finney argues that evidence of the "Lubbock incident" was inadmissible under rule 403 because of unfair prejudice,[8] he did not object to the evidence on that basis in the trial court, and the record does not indicate that the trial court ruled on an "undue prejudice" objection to this evidence. Thus, we hold that he forfeited that complaint for our review, and we overrule the remainder of his second issue. *See* Tex. R. App. P. 33.1(a)(1); *Ferguson v. State*, Nos. 02-16-00451-CR, 02-16-00452-CR, 2017 WL 6047667, at *3 n.3 (Tex. App.—Fort Worth Dec. 7, 2017, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 02-16-00179-CR, 2017 WL 2686325, at *9 (Tex. App.—Fort Worth June 22, 2017, pet. ref'd) (mem. op., not designated for publication).

---

[8]Finney contends that evidence of the "Lubbock incident" was "extremely prejudicial in a number of ways," including that "crimes against children are particularly inflammatory."

## Conclusion

Having overruled both of Finney's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 4, 2018