

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00385-CR

_____

ROY FREEMAN, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F24-85-16

_____

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

After Appellant Roy Freeman failed to return the U-Haul cargo van that he had rented, he was charged with and convicted of unauthorized use of a motor vehicle. *See* Tex. Penal Code Ann. § 31.07. In two points on appeal, he argues that the trial court erred by (1) denying his motion for directed verdict when the State failed to prove that he had operated the U-Haul van without the owner's effective consent and (2) overruling his objection during the trial's punishment phase to evidence of his prior convictions. Because sufficient evidence supports the jury's verdict and the prior convictions were admissible, we will affirm.

**Background**

In October 2022, Freeman rented a U-Haul van. Freeman's girlfriend[1] repeatedly called to extend the rental. By early November, U-Haul was no longer able to charge Freeman's card for extensions, and neither Freeman nor his girlfriend called to provide a different credit card to extend the rental. After Freeman failed to respond to U-Haul's text messages, the company sent him a demand letter notifying him that the van would be reported stolen if he did not return it or contact U-Haul. Freeman did not contact U-Haul, the van was not returned, U-Haul reported it as stolen, and Freeman was soon thereafter stopped by law enforcement and arrested. At trial, the State introduced testimony from the manager of the U-Haul store from which

---

[1]Witnesses at trial did not refer to the woman as Freeman's girlfriend, but Freeman and the State both refer to her by that description.

Freeman had rented the van, the police officer who had taken the stolen vehicle report from the manager, and the officer who had arrested Freeman. The jury found Freeman guilty.

During the punishment phase, the State introduced and the trial court admitted—over Freeman's objection—records from the California Department of Corrections and Rehabilitation. The records indicated that in 1996, Freeman had been convicted of selling cocaine and of possession of a controlled substance and that he had been sentenced for those offenses in 1999 after revocation of probation. The records further showed that he was convicted of the same offenses in 2001.

The jury assessed punishment at the statutory minimum: 180 days' confinement in the state jail and no fine.[2] *See id.* §§ 12.35 (providing that punishment range for state jail felony is confinement for not less than 180 days and not more than two years), 31.07(b) (making the offense a state jail felony).

## Discussion

### I. Sufficiency of the Evidence

Freeman asserts in his first point that the trial court erred when it denied his motion for directed verdict because the State failed to prove all the elements of the offense charged. He argues that "[t]he State simply failed to prove that [he] acted intentionally, or with intent, with respect to the nature of his conduct . . . or to a result

---

[2]Before trial, Freeman rejected the State's plea-bargain offer of time served.

of his conduct" or that he "acted knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he [was] aware of the nature of his conduct or circumstances exist[ed]."

**A. Standard of Review**

We treat a point complaining about the denial of a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

**B. Analysis**

A person commits the offense of unauthorized use of a motor vehicle if the person "intentionally or knowingly operates [the motor vehicle] without the effective consent of the owner." Tex. Penal Code Ann. § 31.07. "Effective consent" includes

consent given by a person who is legally authorized to act for the owner. *Id.* § 31.01(3).

The offense is one in which "otherwise innocent behavior [i.e., operating a motor vehicle] becomes criminal because of the circumstances under which it is done [i.e., without consent]," and therefore a culpable mental state must exist to those surrounding circumstances. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). In other words, to prove its case, the State had to prove (1) that Freeman intentionally or knowingly operated the U-haul van and (2) that he knew that he did not have the owner's effective consent. *See id.* The State could rely on circumstantial evidence to make its case. *See Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

To prove that Freeman lacked consent and knew that he lacked consent, the State offered evidence that U-Haul had contacted Freeman to notify him that his rental had expired and that he needed to return the van or contact U-Haul. This evidence came through testimony from Rebecca Wright, the general manager of the U-Haul location from which Freeman had rented the van. Wright said that when a customer does not return a rented vehicle by the agreed-upon date, the company attempts to reach the customer, and if the company is unable to do so, the company tries to charge the customer's credit card that U-Haul has on file, thereby extending the rental for an additional day. U-Haul "will continue to charge them as long as that card will accept [the] charges," and in that case, the rented vehicle will not be reported

5

to the police as missing. But if the charge does not go through, then the company "proceed[s] with the steps to attempt to recover the vehicle." The company will first contact the customer to notify them the card could not be charged further. "And at that point, [the company] would issue a demand letter that would be sent from corporate to the customer to the address they provided at the time of the rental." Then, if the vehicle is still not returned, the company "would . . . proceed with contacting the police department."

Wright stated that when Freeman rented the van, he provided a Fort Worth address that differed from the address on his (California) driver's license. The van was rented on October 11, 2022; in his rental reservation, Freeman had requested a return date of October 18, but when he picked up the van, the rental was changed to a one-day rental. The van was not returned the next day, but the rental was extended; according to Wright, Freeman "[had] a [woman] call in and extend the rental for him." Wright identified the woman as a "Ms. Thomas." "[N]umerous extensions" were made after that; the rental was ultimately extended six times. Wright stated that most of her contact during the rental period was with Thomas.

The van had still not been returned after the last requested extension, so U-Haul continued to charge the credit card that Freeman had provided until the card stopped accepting the charges. Because Freeman had rented and returned equipment from U-Haul before, Wright extended the rental to November 9. On that date, U-Haul attempted to reach Freeman, but there was no answer.

Notes from the store's rental records reflect that U-Haul sent two text messages to Freeman that day. At 7:52 a.m., U-Haul sent the following text message to the number that Freeman had provided in the rental agreement: "Hello, this is U-Haul of Roanoke. Please call the office at \*\*\*-\*\*\*-\*\*\*\*[3] to update the credit card on file to extend your rental truck." About twelve hours later, U-Haul sent another text stating, "Please contact U-Haul regarding your overdue rental agreement at \*\*\*-\*\*\*-\*\*\*\* so that we may update our records."

On November 10, Wright asked the corporate office to send Freeman a demand letter. That letter was sent on November 16. The letter stated that Freeman's rental had been scheduled for return on November 9 but had not yet been returned. It advised him that if he had left the equipment at a U-Haul location after normal business hours, he needed to call the company immediately and that if he was still in possession of the van, he had "violated [the] rental agreement," and action would be "initiated soon to report that this equipment was stolen." The letter warned him that U-Haul "aggressively pursues criminal prosecution for missing, unreturned[,] or stolen equipment." The letter was mailed to the Fort Worth address that Freeman had provided in the rental agreement.

The van was not returned, and on November 28, Wright reported the van as stolen to the Roanoke Police Department. On the same day, Roanoke police officer

---

[3]We omit the phone number for privacy reasons.

7

Christopher Arndt stopped the van "very close" to the U-Haul location after seeing the van driving without visible taillights. After he provided information about the stop to dispatch, he learned that the vehicle had been reported as stolen. Arndt arrested Freeman for unauthorized use of a motor vehicle. Thomas was a passenger in the van, and Arndt allowed her to claim the couple's belongings from the van before having it towed. Once U-Haul recovered the van, Wright calculated the total rental amount owed—based on time, mileage,[4] fuel and cleaning fees, and the impound fee[5]—as $2,040.03; Wright had been able to charge approximately $350 on Freeman's credit card.

Freeman asserts that the State failed to show that he acted with the requisite culpable mental state. He argues that he was a regular user of U-Haul rentals, that his girlfriend was the person who had extended the rental period, and that there was "no testimony that [he] was aware that his credit card had failed to pay for additional time or that his girlfriend [had] failed to continue getting the extensions on the rental."

As stated above, the State had to prove that Freeman intentionally or knowingly operated the U-Haul van and that he knew that he did not have the effective consent of U-Haul. Arndt testified that he witnessed Freeman operating the

---

[4]Arndt testified that based on the van's contents, it looked like the couple had been living in it. Freeman put a little over 1,000 miles on the van while it was in his possession.

[5]The rental rate was $19.95 a day plus $0.59 per mile. The impound fee was $1,202.22.

van. Wright testified that U-Haul had sent a text to the phone number provided by Freeman to notify him that he needed to contact the store to extend his rental, another text to the same number stating that the rental was overdue, and a demand letter to the address he had provided notifying him that the rental would be reported as stolen if not returned. There was no evidence that the number to which the texts were sent was not Freeman's number, that Freeman did not receive the texts, or that the demand letter had been misdelivered.

Freeman argues that there is no testimony that he was aware that his credit card had failed to pay for additional time or that his girlfriend had failed to continue getting the extensions on the rental. However, his knowledge could be shown by circumstantial evidence, such as the texts sent to his phone number and the demand letter sent to the address that he had provided. The evidence was sufficient to prove that Freeman knew that he did not have U-Haul's effective consent to operate the van. *See Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (holding that when owner testified that he told defendant to return the car by a certain time and that defendant's use of the car after that time was without consent, the testimony was sufficient to establish that defendant knew he no longer had consent to operate the vehicle after that time, despite contrary testimony by defendant and another witness); *see also Lewis v. State*, No. 06-12-00049-CR, 2012 WL 6217588, at *4 (Tex. App.—Texarkana Dec. 13, 2012, no pet.) (mem. op.,

not designated for publication) ("After permission to use a vehicle is given, operation of the vehicle is without consent if it exceeds the scope of consent.").

Freeman also complains that the State could have called his girlfriend to testify "but failed to do so." He maintains that the State shifted the burden to him "as a result of the State's failure to call the one witness who could help the State prove their case, Ms. Thomas." But the State's burden was to produce evidence sufficient to establish the offense's elements beyond a reasonable doubt, not to produce Freeman's own girlfriend to make his defense for him. *See, e.g.*, *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). Freeman makes no argument that any act of the State prevented him from calling Thomas himself.

Freeman cites *King v. State* for the proposition that "[a] conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant." 638 S.W.2d 903, 904 (Tex. Crim. App. 1982). However, that is no longer the rule.[6] *See Mayweather*

---

[6]Freeman's brief also argues that the State failed to provide factually sufficient evidence to prove the requisite mental state, but the Court of Criminal Appeals has held when challenging the sufficiency of the evidence to support an element of an offense, the legal sufficiency standard set out in *Jackson*, 443 U.S. 307 at 319, 99 S. Ct. at 2789, is the only standard that applies. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The brief acknowledges as much in a later section, and thus it is unclear why it raises a factual sufficiency challenge—especially because we have previously reminded his attorney that neither the factual sufficiency standard nor the *King* circumstantial evidence rule remains good law. *See Bertotti v. State*, No. 02-19-00369-CR, 2020 WL 4689844, at *3 n.3 (Tex. App.—Fort Worth Aug. 13, 2020, no pet.) (mem. op., not designated for publication); *see also* Tex. Disciplinary R. Prof'l Conduct 3.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

*v. State*, No. 01-23-00614-CR, 2025 WL 1459584, at *3 n.2 (Tex. App.—Houston [1st Dist.] May 22, 2025, no pet. h.) (discussing history of rule). We overrule Freeman's first point.

## II. Admission of Prior Convictions

In his second point, Freeman contends that the trial court erred when it denied his objection to the admission of his prior convictions during the punishment phase. He argues that the trial court failed to weigh the convictions' probative value versus the danger of unfair prejudice.

### A. Standard of Review

We review a trial court's evidentiary ruling for abuse of discretion. *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). We may not disturb the trial court's decision unless it falls outside the zone of reasonable disagreement. *Id.*

### B. Analysis

Freeman argues that under Texas Rule of Evidence 609(b), if more than ten years have passed since a witness's conviction or release from confinement, evidence of the conviction is admissible only if its probative value substantially outweighs its prejudicial effect. He asserts that the trial record fails to show that the trial court "performed the balancing regarding the prejudicial value in this case."

Evidence is relevant to sentencing "if it is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Beham v. State*, 559 S.W.3d 474, 479 (Tex. Crim. App. 2018) (quoting *McGee*, 233 S.W.3d at 318). As

11

the State points out, admission of prior-offense evidence during punishment is permitted by Code of Criminal Procedure Article 37.07, Section 3(a)(1). Under that section, after a guilty finding, "evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

As Freeman notes, however, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[7] Tex. R. Evid. 403; *Sanders v. State*, 422 S.W.3d 809, 814 (Tex. App.—Fort Worth 2014, pet. ref'd). Freeman argues that the record does not show that the trial court balanced the probative value of the evidence against the danger of unfair prejudice resulting from its admission. However, a silent record does not imply that the trial court did not conduct the required balancing test; a trial court is not required to conduct the balancing test on the record, and the trial court is presumed to have conducted the balancing once Rule 403 is invoked. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *see Sanders*, 422 S.W.3d at 816 n.8.

---

[7]We assume for purposes of this appeal that Freeman's references to balancing and the evidence's prejudice includes an argument that Texas Rule of Evidence 403 excludes evidence that is otherwise admissible under Article 37.07. We further presume that the trial court understood his objection to the evidence to include this argument and that Freeman thus preserved his complaint for appeal.

Further, "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Williams*, 958 S.W.2d at 196. Additionally, "evidence that, beyond a reasonable doubt, the defendant previously committed an extraneous criminal offense . . . is a basis upon which a jury could legitimately form a clearer opinion as to the proper punishment for the defendant's conduct." *Beham*, 559 S.W.3d at 480 (footnote omitted); *see Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) (noting that under Article 37.07, § 3(a), "a defendant's prior record is relevant to the decision that the jury makes" and that "[j]ust as the facts of the instant offense are relevant to tailor the sentence to the particular offense, prior convictions are relevant to tailor the sentence to the particular defendant").

Freeman does not dispute the general relevance to sentencing of a defendant's prior criminal convictions, and he does not explain how admission of the prior convictions was unfairly prejudicial other than arguing that the convictions were too old. But under the Court of Criminal Appeal's "established holdings," "the law places no remoteness limitations on past convictions offered to show the prior criminal record of an accused under Article 37.07." *Mendoza v. State*, 552 S.W.2d 444, 449 (Tex. Crim. App. 1977); *Hernandez v. State*, No. 13-17-00432-CR, 2019 WL 1561822, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication). Thus, the remoteness of a prior conviction does not, by itself, make admission of the conviction unfairly prejudicial. Because Freeman offers

13

no argument other than remoteness for why admission of his prior convictions was unfairly prejudicial, we cannot say that the trial court abused its discretion by admitting evidence of the convictions. We overrule Freeman's second point.

## Conclusion

Having overruled Freeman's two points, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 10, 2025