

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00392-CR
No. 02-24-00393-CR
No. 02-24-00394-CR
No. 02-24-00395-CR

_____

MICHAEL ENGLISH, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court Nos. 1783849, 1816904, 1817089, 1826240

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Michael English pleaded guilty to the following offenses: (1) possession of fentanyl in the amount of one gram or more but less than four grams (Cause No. 1783849), (2) possession of fentanyl with intent to deliver in the amount of four grams or more but less than two hundred grams (Cause No. 1816904), (3) possession of cocaine with intent to deliver in the amount of four grams or more but less than two hundred grams (Cause No. 1817089 Count 1), (4) possession of fentanyl with intent to deliver in an amount of four grams or more but less than two hundred grams (Cause No. 1817089 Count 2), and (5) possession of fentanyl with intent to deliver in an amount less than one gram (Cause No. 1826240).[1] *See* Tex. Health & Safety Code Ann. §§ 481.112(d), .1123(b), (d), .115(c). Following a jury trial on punishment, English was sentenced to thirty-two years' confinement in Cause No. 1783849, thirty-eight years' confinement in Cause No. 1816904, thirty-eight years' confinement for the offense listed in Cause No. 1817089 Count 1, thirty-eight years' confinement for the offense listed in Cause No. 1817089 Count 2, and forty-two years and six months' confinement in Cause No. 1826240. The trial court ordered that the sentences run concurrently.

---

[1]For each of the offenses, English also pleaded true to the State's habitual-offender allegations. *See* Tex. Penal Code Ann. § 12.42(d).

In his sole issue on appeal, English argues that the trial court violated his confrontation rights when it allowed a police officer to testify about other officers' observations and conclusions that English belonged to a gang. We will hold that English has not preserved this complaint. We will further hold that even if we were to assume that he had preserved this complaint and that the trial court had erred by admitting the complained-of testimony, the alleged error is harmless. Accordingly, we will overrule English's sole issue and affirm the trial court's judgments.

## II. BACKGROUND

### A. English's Four Arrests in 2023 and 2024

On June 14, 2023, Andrew Lindsey, a Fort Worth police officer assigned to the gang enforcement unit, went to a café in Fort Worth based on information he had received from officers monitoring city cameras positioned in the area. Lindsey testified at trial that the café was "a known open-air drug market and gang member hangout." He also stated that the area where the café was located was associated with the Five Deuce Hoover Crips gang. While inside the café, Lindsey saw English. Because Lindsey knew that English had an outstanding arrest warrant, Lindsey arrested English. During the arrest, officers found approximately 170 pills on English. Lindsey testified that the pills were counterfeit OxyContin pressed with fentanyl. According to Lindsey, the amount of the pills was "way more than [an amount indicative of] personal use" and was "more consistent with someone [who] was selling . . . narcotics." An employee with the Fort Worth Police Department's

3

(FWPD) crime lab analyzed twenty-six of the pills and determined that they contained 2.833 grams of fentanyl.

On March 2, 2024, Andrew Towns, a Fort Worth police officer assigned to the drug response unit, received a call about a narcotics transaction near the same café where English had been arrested in June 2023. After obtaining a description of a vehicle and a suspect involved in the transaction, Towns observed the vehicle commit a traffic violation and initiated a traffic stop. The driver of the vehicle gave several false names to Towns; however, Towns later identified the driver as English. Towns learned that English had active warrants, so he arrested English. During the arrest, officers discovered that English had M30 pills in his hands.[2] A plastic bag containing the same type of pills was found in English's rectum, and the same type of pills were also found in his vehicle. Towns testified that officers collected approximately 693 M30 pills at the scene. An FWPD crime lab employee analyzed forty-three of the pills and determined that they contained 4.528 grams of fentanyl.

On March 8, 2024—six days after English's March 2 arrest—Fort Worth police officer David Walter was briefed about an individual being "passed out outside a vehicle" at a coffee shop in Fort Worth. Walter approached the vehicle and saw a person—later identified as English—who "appeared to be asleep" in the driver's seat. Walter observed a plastic bag with a white powdery substance inside of the vehicle.

---

[2]At trial, a Fort Worth police officer testified that M30 pills are counterfeit oxycodone tablets containing fentanyl.

4

Walter began a conversation with English, who appeared to be "very groggy." Later during the encounter, Walter observed that the bag containing the powdery substance had "disappeared." Walter asked English to step out of the vehicle, and when English got out and Walter attempted to detain him, English resisted, and a "struggle" ensued. After English was arrested, police officers found the bag containing the powdery substance. Officers also found a bag inside of English's car that contained approximately sixty-six M30 pills. An employee with the FWPD crime lab analyzed forty-one of the pills and determined that they contained 4.286 grams of fentanyl. The employee also analyzed the contents of the bag containing the powdery substance and determined that it contained 26.737 grams of cocaine.

On May 17, 2024, Andrew Nickerson, a Fort Worth police officer assigned to the gang unit, was notified that English was in a nearby area and had outstanding warrants. When Nickerson's vehicle approached English, English started running away. Eventually, Nickerson caught up with English and apprehended him. Officers later retraced the route that English had fled, and they saw M30 pills "strewn across the ground [in an alley] with no bag," "several loose pills on [a] neighboring yard," "a ripped-open bag with the same type [of] pills that were strewn across [a] rooftop," and "two small bags of marijuana" on a roof. An FWPD crime lab employee analyzed one of the pills found by police and determined that it contained 0.107 grams of fentanyl.

5

**B. Trial Testimony Regarding English's Gang Affiliation and Tattoos**

English was later indicted for the offenses described above, and he pleaded guilty.[3] At his jury trial on punishment, numerous Fort Worth police officers testified regarding his 2023 and 2024 arrests.[4]

Over English's objection,[5] Nicholas Maddock—a Fort Worth police officer assigned to the gang intelligence unit—testified regarding English's affiliation with the Five Deuce Hoover Crips gang. Maddock stated that the Five Deuce Hoover Crips is a gang in Fort Worth that deals drugs at the café where English was arrested. He explained that gangs "use common signs and symbols in the form of tattoos" and said that the Five Deuce Hoover Crips use the numbers five and two, maintaining that those numbers are commonly depicted in the gang's tattoos. Maddock testified that it is "very rare" for someone to leave a gang once they have joined.

Maddock explained that Fort Worth maintains a database for documented gang members. He stated that an individual can be placed in the database if they meet two

---

[3]In Cause No. 1826240, English was originally indicted on two counts—(1) possession of fentanyl with intent to deliver in the amount of four grams or more but less than two hundred grams and (2) tampering with evidence—but the State later waived those counts and proceeded in Cause No. 1826240 on one count of possession of fentanyl with intent to deliver in an amount less than one gram.

[4]The substance of that testimony is recounted above in our discussion of the arrests.

[5]We will give further detail regarding this objection in our discussion of English's preservation of his appellate complaint.

of eight criteria.  *See* Tex. Code Crim. Proc. Ann. art. 67.054(b)(2)(C).  Maddock testified that, according to the database, English is a documented member of the Five Deuce Hoover Crips.  Maddock stated that English was first documented as a gang member in 2006.  When asked about the criteria that had placed English in the database, Maddock said that English had self-admitted membership in the Five Deuce Hoover Crips gang "[o]n several occasions"; had "displayed gang tattoos on his body"; had "been arrested with known gang members for criminal activities consistent with gang membership"; and had "been found associating with known gang members in known gang areas."[6]  Maddock stated that he obtained that information from reports submitted by police officers into the database.

Maddock also testified regarding the meaning of English's tattoos.[7]  He explained that English's chest contained tattoos depicting an "AK-47, several bullet holes, smoke, [and] a Rolls Royce symbol."  He stated that English's tattoos also contained the letters "B" and "K," which to Maddock expressed "Blood killer, a killer of their rival gang."  Maddock testified that a tattoo on English's arm contained the phrase "south side," explaining that "[t]he historical south side of Fort Worth is . . . a known Crip neighborhood."  He stated that a tattoo on English's arm of a rat in a rat

[6]On cross-examination, Maddock stated that he had never personally heard English self-admit to being a gang member and had not spoken to any officers who had heard him self-admit.

[7]Photographs depicting English's tattoos were admitted into evidence at trial with no objection and reviewed by Maddock.

trap with a prohibition symbol going across the rat meant "[d]on't talk with the police, don't tell on somebody."

Maddock also described a tattoo on English's arm depicting dice featuring the numbers five and two, explaining that such a tattoo was "common to see [on] Five Deuce Crips." He also testified about tattoos on English's body stating "Boss" and "Gang." According to Maddock, those two tattoos are meant to be read in conjunction with one another. Maddock made note of the fact that the letter "B" in "Boss" contained a small "x" within the letter. He explained that the "x" on the letter "B" signified "Xing out [a] rival." Maddock also described a tattoo on English's arm that said "Crumbs 2 Bricks." According to Maddock, this tattoo "would mean you started with a small amount of drugs and have escalated to selling a large amount of drugs."

English testified during trial. He stated that he had become addicted to fentanyl in or around 2020 and that he started selling fentanyl in 2022. He admitted his guilt with regard to the underlying offenses. As to his tattoos, English maintained that he did not have any "Crip tattoo[s]." He acknowledged that he did have a tattoo of dice depicting the numbers five and two, stating that he got that tattoo when he was twenty-one or twenty-two years old. Regarding the "Boss Gang" tattoo, English stated that the tattoo referred to his "record label."

When asked whether he was a member of a gang, English stated, "I'm associated with a gang. I've never been initiated in a gang." He further testified, "It's

8

just the gang that I was in was just because of the side of town that I'm from. When they pulled up on us, they automatically said we gang members." When asked whether he pretends to be a gang member, English said, "Yes. I mean, if you're born in that neighborhood, you don't have to be initiated in." English denied ever self-admitting to being in a gang. He reiterated that he had never been initiated into a gang, although he acknowledged that his friends were gang members and that he knew gang members and was around them.

## III. DISCUSSION

In his sole issue, English argues that the trial court violated his right to confront his accusers when it allowed Maddock to testify about other officers' observations and conclusions from the gang database that English belonged to the Five Deuce Hoover Crips gang.

### A. English's Failure to Preserve His Complaint

#### 1. Applicable Law

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *Golliday v. State*, 560 S.W.3d 664, 669 n.16 (Tex. Crim. App. 2018). Complaints based on the

9

Confrontation Clause[8] are subject to these preservation requirements. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010); *Gourley v. State*, 710 S.W.3d 368, 373 (Tex. App.—Fort Worth 2025, pet. ref'd); *see Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) ("We conclude the right of confrontation is a forfeitable right—not a waivable-only right—and must be preserved by a timely and specific objection at trial.").

While no "hyper-technical or formalistic use of words or phrases" is required to preserve error, the objecting party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("We have said that '[t]he purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection.'"). Additionally, an objection preserves only the specific ground cited. *See* Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1)(B); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g).

---

[8]The Sixth Amendment's Confrontation Clause—which is made applicable to the states through the Fourteenth Amendment—provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Smith v. Arizona*, 602 U.S. 779, 783, 144 S. Ct. 1785, 1791 (2024).

The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark*, 365 S.W.3d at 339; *see Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). To determine whether the complaint on appeal comports to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009).

### 2. English's Objection to Maddock's Testimony

We now detail English's objections to Maddock's testimony to see whether his complaint on appeal comports with his complaint below.

Prior to Maddock's testimony, English's counsel stated that she objected to testimony that English was a documented gang member. While stipulating that Maddock was "an expert," and while indicating that his testimony regarding the meaning of English's tattoos was "fair game," English's counsel argued that Maddock's testimony regarding information gleaned from the gang database was "hearsay upon hearsay upon hearsay." A lengthy exchange then took place between the trial court and the attorneys regarding that objection. During that exchange, English's counsel repeatedly stated that her objection was based on "hearsay."

English's counsel also complained that she was not able to cross-examine officers who had provided information to the gang database, although counsel's

complaint regarding cross-examination was expressed in terms of her hearsay objection and in terms of the reliability of the information contained in the database. English's counsel stated,

> [M]y problem is I'm not able to cross-examine [the police officer] who allegedly took the statement from [English regarding his gang membership.] I cannot test the reliability of the gang database information, and so I have a[n] officer in uniform who's an expert telling them this is what it is.
>
> . . . .
>
> And I have no way of cross-examining them because it's hearsay. And so I don't—so I believe that it's not appropriate testimony for an expert.[9]
>
> . . . .
>
> I'm asking for the Court not to allow an expert to testify to untested, unreliable information that I cannot cross-examine.
>
> . . . .
>
> . . . . And so for an expert to testify that these are facts and it is what it is because we say what it is, and we have no way of truly challenging that information in front of the jury. And for that reason, I believe that's—I believe it's hearsay and it's prejudicial in that way because it leads the jury to believe automatically what he says because I can't truly challenge . . . the validity of what he's saying.

At the end of the exchange, the trial court stated that it was going to allow

Maddock to testify regarding the gang database and English's gang affiliation, and it

---

[9]In the reporter's transcript, the two sentences preceding this footnote are ascribed to one of the prosecutors. The context, however, indicates that the sentences were spoken by English's counsel. In his brief, English confirms that these sentences were spoken by his counsel.

overruled English's objection. English's counsel then asked the trial court for a running objection to this testimony, which the court granted.

### 3. Analysis

English's complaint on appeal is based on the Sixth Amendment's Confrontation Clause and his assertion that his confrontation rights were violated when Maddock testified about other officer's observations and conclusions that he belonged to the Five Deuce Hoover Crips gang. However, English did not raise any objection at trial based upon the Sixth Amendment, the Confrontation Clause, or his right to confront witnesses.[10] Instead, as detailed above, English's objection was based on hearsay, the alleged unreliability of the database, and the alleged prejudicial nature of Maddock's testimony. That objection does not comport with English's argument on appeal. *See Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92.

Accordingly, we hold that English has not preserved his confrontation complaint because he did not raise it with the trial court. *See Gourley*, 710 S.W.3d at 375 (holding that appellant did not preserve her confrontation complaint because she did not raise it in the trial court); *Bin Fang v. State*, 544 S.W.3d 923, 930 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that appellant's "hearsay objections did not preserve error for his complaint on appeal concerning the Confrontation Clause"); *Pope v. State*, No. 07-16-00369-CR, 2017 WL 5473748, at *6

---

[10] In his brief, English acknowledges that he "did not specifically mention the Confrontation Clause."

13

(Tex. App.—Amarillo Nov. 13, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that appellant did not preserve his confrontation complaint regarding testimony from expert on gang affiliation when appellant did not object on confrontation grounds at trial); *Carrion v. State*, 488 S.W.3d 925, 929 (Tex. App.— Eastland 2016, pet. ref'd) (holding that appellant failed to preserve confrontation complaint to deputy's testimony that he was a member of a gang when appellant objected on hearsay grounds but did not object or advise the trial court that his Sixth Amendment right to confrontation had been violated); *Mitchell v. State*, 238 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that appellant's hearsay objection did not preserve error on his confrontation complaint and stating that "[h]earsay objections and objections to violations of the constitutional right to confront witnesses are neither synonymous nor necessarily coextensive"); *Lopez v. State*, 200 S.W.3d 246, 255 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that appellant's objection that a statement was hearsay, prejudicial, and double hearsay did not preserve his confrontation complaint for appellate review); *see also Reyna*, 168 S.W.3d at 179 ("When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error.").

In his brief, English argues that he did preserve his confrontation complaint, pointing out that his counsel "specifically object[ed] to hearsay and the inability to cross-examine the officers whose observations created the basis of Maddock's expert

14

opinion that [English] is a gang member." But the general complaints made by English's counsel at trial regarding cross-examination—ones which were made in the context of English's hearsay objection—do nothing to preserve English's confrontation complaint. *See Edwards v. State*, No. 13-23-00525-CR, 2024 WL 3819328, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2024, no pet.) (mem. op., not designated for publication) (holding that appellant's objection that his counsel "can't cross examine, you know, his statement on this hearsay" was "unclear" and did not preserve his confrontation complaint); *Davis v. State*, No. 06-21-00063-CR, 2022 WL 1493027, at *4 (Tex. App.—Texarkana May 12, 2022, no pet.) (mem. op., not designated for publication) (holding that appellant's counsel's statement at trial that "[w]e would have no way to cross-examine [a witness] on hearsay statements" did not preserve appellant's Confrontation Clause argument on appeal); *Austin v. State*, 222 S.W.3d 801, 811 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (rejecting appellant's contention that her "reference to the inability to cross-examine the declarant was sufficient to make the confrontation grounds of her objection apparent" when "[t]he context of [her] argument shows appellant's attorney briefly mentioned cross-examination only in the context of making a hearsay objection"); *see also Brambila v. State*, No. 13-15-00082-CR, 2016 WL 7242847, at *9 (Tex. App.—Corpus Christi–Edinburg Dec. 15, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's request to recall a witness at trial did not

preserve his confrontation complaint on appeal when he "did not inform the trial court that his request was based on the Confrontation Clause").[11]

## B. Harm

Even if we were to assume that English had preserved his confrontation complaint, and even if we were to further assume that the trial court had erred by allowing Maddock to testify that English was a documented member of the Five Deuce Hoover Crips gang, we still would not reverse the trial court's judgments if the alleged error was harmless. We thus turn to harm.

---

[11]To support his argument regarding preservation, English points us to *Thompson v. State*, No. 01-10-00637-CR, 2012 WL 2106549 (Tex. App.—Houston [1st Dist.] June 7, 2012, no pet.) (mem. op., not designated for publication). In that case, the appellant's attorney made the following objection: "Not only is it hearsay, but it denies me the right to cross-examine Mr. Jones unless he testified." *Id.* at *4. The First District Court of Appeals held that the appellant's objections reflected "two distinct grounds for the objection"—one based on hearsay and the other based on the right to cross-examine a witness. *Id.* The court of appeals held that although the appellant's objection did not explicitly refer to the Confrontation Clause, because "the inability to cross-examine was distinctly articulated as a ground for objection separate from the hearsay objection," the court held that the appellant had preserved his confrontation complaint. *Id.* We find *Thompson* distinguishable because the appellant's complaint in that case regarding the right to cross-examination was distinct from his hearsay objection; here, in contrast, English's complaint regarding his right to cross-examine witnesses was made in conjunction with his hearsay objection. *See id.* Further, even if such minor references to cross-examination could be construed as including a Confrontation Clause objection, English's trial objection was not sufficiently specific to preserve error. *See Austin*, 222 S.W.3d at 811 ("Even if such a minor reference to cross-examination could be construed to include a Confrontation Clause objection, '[w]hen a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error.'" (quoting *Renya*, 168 S.W.3d at 179)).

### 1. Applicable Law

Error in admitting evidence in violation of the Confrontation Clause is constitutional error subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Allison v. State*, 666 S.W.3d 750, 763 (Tex. Crim. App. 2023); *see* Tex. R. App. P. 44.2(a). Constitutional error requires reversal of the judgment "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see also Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).

We should not focus on the propriety of the trial's outcome but on whether the constitutional error adversely affected the integrity of the process leading to the punishment. *See Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020); *see also Wesbrook*, 29 S.W.3d at 119 ("[T]he appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence."). "[A]n analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)).

17

When determining whether constitutional error under the Confrontation Clause is harmless, the following factors are relevant to our analysis: (1) the importance of the out-of-court statement to the State's case, (2) whether the out-of-court statement was cumulative of other evidence, (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points, and (4) the overall strength of the State's case. *Allison*, 666 S.W.3d at 763–64; *Langham v. State*, 305 S.W.3d 568, 582 (Tex. 2010). We may also consider the source and nature of the error, the extent, if any, that the error was emphasized by the State, and how much weight the jury might have placed on the erroneously admitted evidence compared to the remainder of the evidence. *Allison*, 666 S.W.3d at 764; *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007).

### 2. Analysis

Here, there was ample evidence to establish that English was associated with—if not a member of—the Five Deuce Hoover Crips gang. English was arrested on multiple occasions possessing large quantities of drugs at a café where the Five Deuce Hoover Crips gang was known to sell drugs. He also had several tattoos indicating a relationship with the gang, including a tattoo featuring the numbers five and two (Maddock testified it was "common to see [such a tattoo on] Five Deuce Crips"), a tattoo containing the letters "B" and "K" (Maddock testified this meant "Blood killer), and tattoos stating "Boss" and "Gang" with an "x" on the letter "B" (Maddock explained this signified "Xing out [a] rival").

18

Perhaps more damning, English acknowledged that he was "associated with a gang." And while he maintained that he had never been initiated in a gang, he also stated that he was "in" a gang, telling the jury, "It's just the gang that I was in was just because of the side of town that I'm from."[12] English also admitted that he had pretended to be a gang member, noting that "if you're born in the neighborhood, you don't have to be initiated in." He also acknowledged that his friends were gang members, that he knew gang members, and that he hung around gang members.[13] Given the other evidence establishing English's association with the Five Deuce Hoover Crips gang, we cannot conclude that the alleged error in admitting Maddock's testimony that English was a member of the gang caused any harm. *See Sanders v.*

---

[12]In front of the jury, English's counsel repeatedly asked him questions suggesting that he was part of the Five Deuce Hoover Crips, and English did nothing to correct her. On one occasion, his counsel asked, "And when you decided to be part of the 5 x 2, Five Deuce Crips, did all the people, all the guys do that sort of thing for you?" English responded, "Yes, ma'am." On another occasion, his counsel asked, "Have you had time to reflect on your life from elementary school, particularly when you started using drugs, joined the Five Deuce Crips, all the way you've had from the time you quit school; if you look back on all of that today, what have you learned about that?" English responded, "That I could have made better decisions, that's the upgrade, but I still had a decision in a situation[,] and I made my own decisions[,] and I made mistakes." During closing argument, defense counsel referenced the Crips and said that English "was part of that gang." English's counsel also stated during closing that English had been "involved" with a gang "since his teenage years," telling the jury that he had spent "half of his life with the gang life." Later during closing, his counsel remarked, "He's a gang member from the neighborhood. It's just his life."

[13]On appeal, English makes no argument to suggest that he would not have testified if the trial court had sustained his objection to Maddock's testimony.

*State*, 422 S.W.3d 809, 818 (Tex. App.—Fort Worth 2014, pet. ref'd) (holding that any error in the admission of a statement in violation of appellant's right to confrontation was harmless in view of other unobjected-to evidence establishing the same facts); *see also Taylor v. State*, No. 07-15-00125-CR, 2017 WL 1173800, at *3 (Tex. App.—Amarillo Mar. 28, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that any error in the admission of statements in violation of the Confrontation Clause was harmless when the challenged statements were cumulative of other evidence and other evidence corroborated the challenged statements).

Thus, after carefully reviewing the record and performing Rule 44.2(a)'s required harm analysis, we hold beyond a reasonable doubt that the trial court's alleged error did not contribute to English's punishment.[14] *See* Tex. R. App. P. 44.2(a).

We overrule English's sole issue.

### IV. CONCLUSION

Having overruled English's sole issue, we affirm the trial court's judgments.

---

[14]We are mindful that the sentences imposed by the trial court were to run concurrently and that the longest sentence was for a term of forty-two years and six months' confinement—less than half of the highest sentence English could have received, ninety-nine years' confinement. *See* Tex. Penal Code Ann. § 12.42(d).

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 4, 2025